IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2017

## MARQUIZE BERRY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 13-00626        J. Robert Carter, Jr., Judge

_____

### No. W2016-02344-CCA-R3-PC

_____

The petitioner, Marquize Berry, appeals the denial of his post-conviction petition, arguing trial counsel's failure to file a pre-trial motion regarding video evidence of the crime pursuant to *State v. Ferguson*, 2 S.W.3d. 912 (Tenn. 1999), was ineffective. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and NORMA MCGEE OGLE, J., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Marquize Berry.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Dru Carpenter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts and Procedural History*

#### A.    Trial Proceedings and Direct Appeal

In 2013, a Shelby County Criminal Court jury convicted the petitioner of attempted second degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony, for which he received an effective sentence of sixteen years. This Court affirmed the sufficiency of the evidence for the petitioner's attempted second degree murder conviction on direct appeal, but remanded the case for the trial court to correct "certain clerical amendments to the judgments." *State v. Marquize Berry*,

No. W2014-00785-CCA-R3-CD, 2015 WL 1278415, at *1 (Tenn. Crim. App. Mar. 18, 2015), *appeal granted* (Nov. 16, 2015), *aff'd in part, rev'd in part*, 503 S.W.3d 360 (Tenn. 2015).[1]  On direct appeal, this Court recited the following underlying facts and procedural history:

> In February 2013, the Shelby County Criminal Court grand jury charged the [petitioner] with one count each of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony.  The trial court conducted a jury trial in November 2013.
>
> The State's proof at trial showed that on the afternoon of June 15, 2012, Rodney Jamison visited an apartment complex on Kansas Street in Memphis, where he stood outside and observed a dice game between the [petitioner], known as "Fat Daddy," and another man named Marco, who used the moniker, "Stink."  Mr. Jamison had known the [petitioner] since the two men were children.
>
> During the course of the game of dice, Mr. Jamison came to believe that the [petitioner] was cheating.  Mr. Jamison expressed his belief to "Stink" and encouraged him to walk away from the game.  A heated argument ensued between Mr. Jamison and the [petitioner], and a small crowd began to gather.  The [petitioner] threatened to retrieve "a strap," which is slang for a handgun.  Mr. Jamison questioned why a handgun was necessary and lifted his shirt to show the [petitioner] that he was unarmed. Mr. Jamison suggested that they fight instead, but the [petitioner] declined. The [petitioner] again stated that he was going to get "a strap," and the [petitioner] walked away, disappearing behind the apartments.  Mr. Jamison stayed where he was, believing the argument to be over.
>
> A few minutes later, the [petitioner] reappeared and confronted Mr. Jamison about their earlier disagreement.  Mr. Jamison became concerned and ran toward a nearby car, turning back in time to see the [petitioner]

---

[1]Upon review, our supreme court summarily granted the petitioner's Rule 11 application in order to address the confusion among the courts as to how "a single 'merged conviction' should be recorded on the resulting judgment document or documents." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015).  To that end, our supreme court issued an order stating "when two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document *for each count.*" *Id.* at 364.  In the order, our supreme court also affirmed this Court's judgment as to the sufficiency of the evidence supporting the petitioner's attempted second degree murder conviction.

- 2 -

holding a black handgun. The [petitioner] chased Mr. Jamison around the car, and Mr. Jamison attempted to run across the street. According to Mr. Jamison, the [petitioner] fired three shots, striking Mr. Jamison in the lower back with the second shot. The [petitioner] attempted to continue firing at Mr. Jamison, but the weapon would no longer fire, and the [petitioner] fled the scene.

Mr. Jamison entered a small grocery store across the street from the apartments and collapsed. He was taken to the hospital and underwent surgery to repair the damage caused by the bullet. Mr. Jamison later spoke with Memphis Police Department ("MPD") officers and informed them that "Fat Daddy" had shot him. On June 25, Mr. Jamison viewed a photographic lineup and positively identified the [petitioner] as his shooter.

Courtney Edwards, who was familiar with both Mr. Jamison and the [petitioner], was also visiting the apartments on Kansas Street on June 15 and observed the argument between the [petitioner] and Mr. Jamison. Mr. Edwards saw the defendant leave the scene briefly and then return, and Mr. Edwards saw the [petitioner] shoot Mr. Jamison. Mr. Edwards immediately left the scene, but he returned a few minutes later and informed MPD officers that he had witnessed the shooting. Mr. Edwards explained to the officers that he did not feel comfortable speaking with them in front of the crowd of people that had gathered at the grocery store. Officers then transported Mr. Edwards to the police station where he gave a signed statement and positively identified a photograph of the [petitioner] as depicting the man who had shot Mr. Jamison.

MPD Officer Martrell Boswell responded to the call of the shooting on Kansas Street on June 15. Mr. Edwards informed Officer Boswell that the shooter was known as "Fat Daddy" and that the shooter's grandmother resided in the apartment complex where the shooting had occurred. Officer Boswell proceeded to the grandmother's residence, where he learned that the true identity of the shooter was Marquize Berry.

Norman Towaf, who was acting manager of the grocery story (sic) across the street from the apartments, testified that he was taking care of the store while his cousin, the owner, was on vacation out of the country. Mr. Towaf did not witness the shooting, but he allowed MPD officers to view the store's video surveillance footage. One of the store's video cameras captured the shooting. According to Officer Boswell, the video showed a group of men gathered across the street from the store. Shortly thereafter,

Officer Boswell "saw a male black coming out of an abandoned apartment beginning to shoot at one of the male blacks and he ran off camera and the other guy ran off camera." MPD Sergeant Eric Kelly also viewed the surveillance footage and described a similar scene, testifying that one male left the gathered group and entered one of the apartments. A few moments later, a man dressed in all black approached the group and "there appear[ed] to be a commotion." Sergeant Kelly described the victim's ducking behind a vehicle to avoid the gunman and then running toward the grocery store as the man in black gave chase. Both Officer Boswell and Sergeant Kelly described seeing muzzle flashes or "puffs of smoke" emanating from the gun the man in black was holding, but neither officer could discern any faces on the video. Because both Mr. Towaf and Sergeant Kelly were unfamiliar with the video surveillance system, the video was not preserved and was later deleted.

Less than two weeks after the shooting, Mr. Jamison encountered the [petitioner] at a local shopping mall. According to Mr. Jamison, the [petitioner] approached him, admitted having shot him, and threatened to do it again. The [petitioner] even instructed Mr. Jamison to "meet [him] on Kansas [Street]" where the shooting had taken place.

With this evidence, the State rested. Following the trial court's denial of the [petitioner's] motion for judgment of acquittal and a *Momon* colloquy, the [petitioner] elected not to testify but did choose to present proof.[2] MPD Officer Dustin Kennedy testified that he spoke with both Mr. Jamison and Mr. Edwards after the shooting and that neither man provided a description of the shooter, only identifying him as "Fat Daddy." MPD Sergeant Lorenzo Young testified that he, too, spoke with both Mr. Jamison and Mr. Edwards and that he had taken a statement from Mr. Edwards.

Based on this evidence, the jury convicted the [petitioner] of the lesser included offense of attempted second degree murder. In addition, the jury convicted the [petitioner] as charged of both aggravated assault and employing a firearm during the commission of a dangerous felony. Following a sentencing hearing, the trial court merged the aggravated assault verdict with the attempted second degree murder conviction and sentenced the [petitioner] as a standard offender to a term of 10 years'

---

[2]*See Momon v. State,* 18 S.W.3d 152, 161-62 (Tenn. 1999).

incarceration. In addition, the trial court imposed a sentence of six years' incarceration for the conviction of employing a firearm during the commission of a dangerous felony, to be served consecutively to the 10-year sentence, for a total effective sentence of 16 years' incarceration.

*Id.* *1-2 (footnotes omitted).

## B.     Post-Conviction Proceedings

On February 5, 2016, the petitioner filed a pro se petition for post-conviction relief asserting a violation of his protection against double jeopardy and that his "conviction was based on action of a grand or petit jury that was unconstitutionally selected and impaneled." The petitioner also claimed he received ineffective assistance of counsel. As to his ineffective assistance of counsel claims, the petitioner alleged trial counsel failed to relay a guilty plea offer from the State, failed to argue against an alleged double jeopardy violation in his indictment, and failed to effectively inform the petitioner of the strengths and weaknesses of his case thus rendering him unable to make an informed decision as to trial. The post-conviction court appointed counsel, and the petitioner filed an amended petition for post-conviction relief, alleging trial counsel: (1) "was ineffective for failing to properly investigate the case and prepare the matter for trial;" and (2) "was ineffective for failing to file and litigate all appropriate pretrial motions and include all errors in the motion for new trial." The petitioner also alleged appellate counsel failed to "raise all appropriate issues on appeal."

The petitioner later filed a second amended petition for post-conviction relief wherein he alleged additional failures of trial counsel, as follows: (1) "[t]rial counsel was ineffective for failing to file and litigate all appropriate pretrial motions, including a motion pursuant to *State v. Ferguson* and *State v. Merriman*, and include all errors in the motion for new trial;"[3] (2) "[t]rial counsel was ineffective for failing to make all appropriate hearsay objections during trial;" and (3) "[t]rial counsel was ineffective for advising [the] [p]etitioner not to testifiy." The post-conviction court held an evidentiary hearing wherein both trial and appellate counsel testified.

---

[3]*State v. Ferguson*, 2 S.W.3d. 912 (Tenn. 1999) (adopting a balancing approach to determine whether the exculpatory nature of destroyed evidence renders a defendant's trial fundamentally unfair); *State v. Merriman*, 410 S.W.3d 779, 797 (Tenn. 2013) (holding "the standard of review of a trial court's determination as to whether a defendant was deprived of a fundamentally fair trial is de novo with no presumption of correctness" and "[a] trial court's determination of the appropriate remedy for the State's failure to preserve the evidence is reviewed under an abuse of discretion standard").

Initially, appellate counsel only briefly testified, stating he challenged the sufficiency of the evidence on direct appeal. Trial counsel then testified primarily about the video evidence at issue in this appeal. Trial counsel explained that prior to trial she learned police officers examined video footage of the shooting captured from a nearby store. Trial counsel was aware the officers were unable to download the video, and it was later erased. As a result, trial counsel never viewed the video footage of the shooting. Instead, she relied on "the narrative of the police officers who reviewed it" and devised a strategy for trial aimed at attacking the inconsistencies between the officers' description of the shooter in the video and the victim's description. According to trial counsel, the officers' narrative described a shooter "dressed all in black" whereas the victim stated the shooter "was wearing blue jeans and a white T-shirt."

Based on the inconsistencies, trial counsel chose to highlight the differences between the officers' and the victim's descriptions of the shooter rather than file a *Ferguson* motion, stating:

> The impact of the visually observing the shooting and that would have on the jury versus the officer's plain testimony that he saw the shooter wearing black and then the victim describing the shooter in different clothing I thought was the better route to take.

Trial counsel further explained that her strategy emerged based upon additional evidence produced against the petitioner at trial, stating: "based on the other evidence available to the [trial] [c]ourt with the witnesses, multiple witnesses identifying [the petitioner], it was our decision to forgo [a *Ferguson* motion] and show the jury the inconsistencies in the testimony and the evidence." Trial counsel believed a *Ferguson* motion "would probably have been unlikely to succeed." Additionally, trial counsel explained she filed a motion to continue to ensure the officers' presence at trial and proceeded with the strategy detailed above. The petitioner did not testify at the hearing.

After taking the petitioner's claims under advisement, the post-conviction court found the petitioner failed to prove ineffective assistance of counsel, and denied relief. This timely appeal followed.

### Analysis

On appeal, the petitioner asserts the trial court erred in denying his petition for post-conviction relief, alleging trial counsel's "strategy of not filing a *Ferguson* motion when she knew the evidence that was not preserved was potentially exculpatory evidence [was] not an informed strategy." The State asserts the petitioner failed to present clear

and convincing evidence demonstrating trial counsel was deficient or how her alleged deficiency prejudiced his trial. Upon our review, we agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The post-conviction petitioner bears the burden of proving his allegations of fact by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution both require that criminal defendants receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citation omitted). When a petitioner claims he received ineffective assistance of counsel, he has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). With regard to the standard, our supreme court has held:

[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter*, 523 S.W.2d at 934-35).

When reviewing trial counsel's performance, this Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id.*

To satisfy the prejudice prong of the test, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to

undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). In order to prevail, the deficient performance must have been of such magnitude that the petitioner was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see also Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Here, the petitioner has failed to present any evidence supporting his assertion that trial counsel's failure to file a *Ferguson* motion was ineffective. As identified by the post-conviction court, the alleged ineffectiveness highlighted by the petitioner is not supported by the proof presented. Rather, at the evidentiary hearing, trial counsel testified as to why she did not file a *Ferguson* motion, explaining she instead chose to address the video evidence during the police officers' and the victim's testimony at trial.

As detailed above, trial counsel was aware of the video footage that captured the shooting prior to trial and was also aware that police officers were unable to properly download the video for later use. Upon learning the video footage was not available for trial, trial counsel ensured the police officers who viewed the video were available to testify at trial by filing a motion to continue. Trial counsel then presented inconsistencies between the officers' description of the shooter's appearance on the video, believing the shooter to be wearing all black, and the victim's description of the petitioner's appearance at the time of the shooting, stating the petitioner was wearing blue jeans and a white T-shirt. Nothing in the record indicates this strategy was not sound, and the petitioner failed to present additional evidence in support of his claims. *See Strickland*, 466 U.S. 689. Simply because trial counsel's strategy was unsuccessful does not render her assistance ineffective. *Cooper*, 847 S.W.2d at 528. As such, the petitioner has failed to show by clear and convincing evidence how trial counsel's failure to file a *Ferguson* motion constituted ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694. This argument is without merit.

In denying post-conviction relief, the post-conviction court stated, "[the] [p]etitioner has failed to demonstrate that he received ineffective assistance of counsel." We agree with the post-conviction court's assessment of the petitioner's claims. No evidence exists in the record to support his attack on trial counsel's performance or how the alleged deficient performance affected the outcome of his trial. *See Strickland*, 466 U.S. at 687. The petitioner is not entitled to post-conviction relief for his claim of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE